IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MILDRED SHIRLENE EDWARDS, *et al.* | § | |
| v. | § | CIVIL ACTION NO. 9:10cv89 |
| OCWEN LOAN SERVICING, LLC, *et al.* | § | |

MEMORANDUM OPINION AND ORDER
ON MOTIONS FOR SUMMARY JUDGMENT

The above-styled lawsuit was filed in the 145th Judicial District Court of Nacogdoches County, Texas, on May 13, 2010. The case was removed and filed in this Court on June 11, 2010. On August 5, 2010, the case was transferred to the undersigned with the consent of the parties in accordance with 28 U.S.C. § 636. The parties filed competing motions for summary judgment. Plaintiff filed a Motion for Summary Judgment and for Partial Summary Judgment and Voluntary Dismissal of HAMP Claims (document #52) and Defendant filed its Motion for Summary Judgment (document #53) on the same date.

*Background*

Plaintiffs in this case are Mildred Shirlene Edwards, individually and as independent executor of the Estate of Stephen Andrew Edwards, Sr., and the Estate of Stephen Andrew Edwards, Sr. The Defendants are Ocwen Loan Servicing, LLC ("Ocwen"), and U.S. Bank National Association, as Trustee for the Registered Holders of Aegis Asset Backed Securities Trust, Mortgage Pass-Through

Certificates, Series 2005-5 ("U.S. Bank"). This case concerns a Foreclosure Action that was brought in relation to a home equity loan on Plaintiffs' homestead.

In their Amended Complaint, Plaintiffs allege that Stephen Edwards, Sr. was induced to sign a "Texas Home Equity Adjustable Rate Note" on August 9, 2005, secured by the home he owned with his wife, Mildred Edwards, located in Nacogdoches County, Texas. According to Plaintiffs, the Note does not bear the signature of Mildred Edwards, but a Texas Home Equity Security Instrument, which purports to create a lien on Plaintiffs' homestead, was signed by both Mr. and Mrs. Edwards. Plaintiffs state that the Note shows a thirty-year loan with principal in the amount of $75,000, plus interest with a variable interest rate ranging from 9.490% to 15.490%, depending on the LIBOR index.

Plaintiffs allege that they were contacted in September 2009 by representatives for Defendants and were encouraged to apply for a loan modification. They further allege that they were advised not to make loan payments while their loan modification application was being considered and were reassured that they were not in danger of foreclosure. Plaintiffs contend that they were instructed to reapply when the requested loan modification was denied and were again told to withhold their loan payments. Plaintiffs submit that despite the assurances from Defendants' representatives that there was no danger of foreclosure, a Foreclosure Action was filed on December 21, 2009. This lawsuit followed on May 13, 2010. Plaintiffs assert multiple defenses to the foreclosure action and assert claims for breach of contract (concerning Defendants' alleged violations of the Home Affordable Mortgage Program), negligence, fraud, a violation of the Helping Families Save Their Homes Act, and violations of the Texas Debt Collection Act and the Federal Fair Debt Collection Practices Act. U.S. Bank asserts a counterclaim against Plaintiffs for breach

of contract and suit on the note seeking declaratory judgment and attorneys' fees and costs. U.S. Bank asserts that it is the current legal owner and holder of the Note and the beneficiary of the Security Instrument.

Plaintiffs subsequently filed a Motion for Summary Judgment and for Partial Summary Judgment and Voluntary Dismissal of HAMP Claims (document [#52](#)). Plaintiff first seeks summary judgment dismissing Defendants' counterclaim and granting Plaintiffs' request for a declaratory judgment that Defendants do not have the right to foreclose. In addition, Plaintiffs seek a partial summary judgment as to Defendants' liability for debt collection violations. Finally, Plaintiffs dismiss their HAMP contract claims.

On the same date, Defendants filed a Motion for Summary Judgment (document [#53](#)). Defendants assert that Shirlene Edwards, in her individual capacity, lacks standing because she is not a party to the Note, even though the Note created a lien on her homestead. Defendants additionally assert that Plaintiffs agreed, pursuant to the Loan Modification Agreement signed on November 16, 2009, that they had no defenses to Defendants' efforts to foreclose on the Note and no rights to set-off or counterclaims to such actions. As a result, Defendants argue that Plaintiffs' claims are barred by estoppel. Further, Defendants submit that the notice requirements and opportunity to cure were met in this case, that Plaintiffs' negligence and fraud claims are barred by the economic loss rule, that the notification requirements found in 15 U.S.C. § 1641(g) concerning mortgage loans that are sold or assigned were enacted after the alleged violation occurred and that Plaintiffs have no evidence supporting their claims. Moreover, Defendants assert that the Texas DTPA and the FDCPA do not apply because Defendants are not "debt collectors" as defined in the FDCPA and Plaintiffs are not "consumers" as defined in the DTPA. Defendants seek judgment in

their favor on all of Plaintiffs' claims and judgment in their favor on their counterclaims for breach of contract and suit on a note.

Most recently, on February 29, 2012, Plaintiffs filed a Notice of Filing of Letter Brief Regarding Abandonment of DTPA Claim (document [#88](#88)). In their letter brief (document [#89](#89)), Plaintiffs explain that they are abandoning their DTPA claim, asserted under the tie-in provision of the Texas Debt Collection Act, as a result of a recent decision in a case styled *Brandon v. Wells Fargo Bank*, 2011 WL 6338832 (E.D.Tex. Nov. 30, 2011),[1] finding that the plaintiff under similar circumstances was not entitled to recover under the DTPA tie-in provision because it relates to the purchase of goods and services and not to loans.

*Facts*

Stephen Andrew Edwards signed a Texas Home Equity Adjustable Rate Note on August 9, 2005 for a principal amount of $75,000.00, plus interest. The Lender on the Note is Aegis Funding Corporation. The "Borrower's Promise to Pay" section of the Note includes a statement, "I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" The copy of the Note submitted by Plaintiffs includes a stamp stating "Pay to the Order of Aegis Mortgage Corporation WITHOUT RECOURSE Aegis Funding Corporation," signed by Jose Guevara, Assistant Secretary. The Note further provides that the property located at 789 Brush Prairie Rd., Garrison, Texas 75946 is subject to a lien created by a separate Security Instrument. A Texas Home Equity Security Instrument, also dated August 9, 2005, is signed by both Mildred Shirlene Edwards

---

[1] A Report and Recommendation was filed by U.S. Magistrate Judge Amos Mazzant on November 30, 2011 and adopted by U.S. District Judge Michael H. Schneider on December 19, 2011.

and Stephen Andrew Edwards, and identifies Plaintiffs' property in Garrison. The Security Instrument states that it secures to the Lender the repayment of the extension of credit and performance of the Borrower's covenants and agreements under both the Security Instrument and the Note. The Security Instruments defines "Borrower" as "Stephen Andrew Edwards and Wife, Mildred Shirlene Edwards." A Texas Home Equity Adjustable Rate Rider and a Texas Home Equity Affidavit and Agreement (First Lien) were also executed on August 9, 2005 and signed by both Stephen and Mildred Edwards.

A Transfer of Lien was executed on August 28, 2009, and recorded on October 2, 2009, transferring the lien on Plaintiffs' property from Aegis Funding Corporation to Ocwen Loan Servicing, LLC. Mortgage Electronic Registration Systems, Inc., acting as nominee for Aegis Funding Corporation, transferred the lien on Plaintiffs' property to U.S. Bank National Association, as Trustee for the Registered Holders of Aegis Asset Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2005-5, on November 13, 2009, with an effective date of November 14, 2005. The transfer of lien was recorded on December 16, 2009. An Allonge, an attachment to the negotiable instrument, also dated November 13, 2009, with an effective date of November 14, 2005, states that the present Owner and Holder of the Note, Aegis Funding Corporation, transferred the Note to U.S. Bank National Association, as Trustee for the Registered Holders of Aegis Asset Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2005-5. A Correction Transfer of Note and Lien was executed by Aegis Funding Corporation on December 17, 2010 and recorded on December 29, 2010. In the Correction, it is noted that "it was and is the intent of the Parties that the Note and Security Instrument be assigned to U.S. Bank, and the Parties do hereby desire to

correct the previous transfers and assignments of the Note and Security Instrument and to memorialize the assignment of the Note and Security Instrument to U.S. Bank."

Ocwen is a loan servicer that began servicing the Note at issue in this case on October 17, 2005. On September 15, 2009, Ocwen sent a Notice of Default to Stephen Edwards. The notice includes standard language stating that the "communication is from a debt collector attempting to collect a debt . . ." Ocwen discussed the possibility of loan modification with Plaintiffs to lower their monthly payments and sent them an application. Multiple documents had to be submitted in conjunction with the application. Defendants produced a copy of a Loan Modification Agreement signed by Stephen and Shirlene Edwards, dated November 16, 2009. The document does not have a signature from a representative of Ocwen. The Loan Modification Agreement provides for an initial down payment of $578.41 due on or before November 30, 2011, with payments of principal and interest thereafter in the amount of $435.30 beginning on January 1, 2010. The agreement states that "[u]pon modification, the annual rate of interest charged on the unpaid principal balance of your loan will be converted to a fixed rate of 6.0600%." Plaintiffs did not submit the initial down payment due on the Loan Modification Agreement or make any payments.

A Notice of Acceleration of Loan Maturity was sent to Plaintiffs on November 19, 2009. A Home Equity Foreclosure Application was filed on December 21, 2009 in the 145th Judicial District Court of Nacogdoches County, Texas, by U.S. Bank. This lawsuit was then filed by Stephen and Mildred Edwards in the 145th Judicial District Court of Nacogdoches County, Texas, on May 13, 2010. The case was removed to this Court on June 11, 2010. Some time thereafter, Stephen Edwards died and the Estate of Stephen Andrew Edwards, Sr., was substituted in as a plaintiff.

## *Summary Judgment Standard*

Rule 56(a) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once, the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106

S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

### *Discussion and Analysis*

*Standing*

Plaintiffs assert that Ocwen and U.S. Bank do not have standing and are not entitled to enforce the Note because they are not legal owners of the Note and lien in an unbroken chain of title. They also object to the Correction Transfer of Note and Lien. Plaintiffs further contend that Defendants cannot establish a valid Pooling and Servicing Agreement that would authorize Ocwen to foreclose on behalf of U.S. Bank. Defendants, on the other hand, argue that Plaintiffs do not have standing to contest an assignment.

The note at issue in this case specifically provided that the borrower understands that the note may be transferred and that, "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" As multiple district courts have

agreed, a mortgagor does not have standing to challenge various assignments of the note or pooling and service agreements because the mortgagor is not a party to the assignments or agreements. *See, e.g., Eskridge v. Federal Home Loan Mortgage Corporation, et al.*, 2011 WL 2163989 (W.D.Tex. Feb. 24, 2011); *McAllister v. BAC Home Loans Servicing, L.P.*, 2011 WL 2200672 (E.D.Tex. Apr. 28, 2011); *Allen v. Chase Home Finance, LLC, et al.*, Civil Action No. 4:11CV223 (E.D.Tex. Jun. 10, 2011); *Foster, et al. v. Ocwen Loan Servicing, LLC, et al.*, Civil Action No. 3:10CV1058 (N.D.Tex. Jul. 26, 2011).

The summary judgment evidence in this case documents the transfer of the note and deed of trust to U.S. Bank, which establishes U.S. Bank's standing to assert a claim on the note. *Maluski v. U.S. Bank NA*, 349 Fed.Appx. 971 (5th Cir.2009) (citing *Dade v. Hoover*, 191 S.W.3d 886, 888 (Tex.App.2006) and *Vernor v. Southwest Fed. Land Bank Ass'n, FLCA*, 77 S.W.3d 364, 366 (Tex.App.2002). Pursuant to the UCC, a "person entitled to enforce" an instrument, "means (i) the holder of the instrument, (ii) a nonholder in possession of a the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument . . ." Tex.Bus. & Com.Code § 3.301. A "holder" includes "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession." Tex.Bus. & Com.Code § 1.201(b)(21)(A). A person may become the holder either at issuance or by negotiation. *Leavings v. Mills*, 175 S.W.3d 307, 309 (Tex.App.–Houston [1st Dist.], no pet.). A "negotiation" is a transfer of possession "of an instrument by a person other than the issuer to a person who thereby becomes its holder." Tex.Bus. & Com.Code § 3.201(a). In general, a negotiation requires the transfer of possession of the instrument and its indorsement by the holder. "If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."

Defendants' uncontroverted summary judgment evidence shows that the original note in this case is maintained by Ocwen as the servicing agent for U.S. Bank. The Texas Property Code authorizes a mortgage servicer to service a mortgage and pursue foreclosure if certain conditions are met. See Tex.Prop.Code Ann. § 51.0025. Although Plaintiffs complain that an original note has not been produced, Plaintiffs have not shown that the production of the original loan documents is required by Texas law. Nothing in the Texas Property Code requires the mortgagee or mortgage servicer to provide the original note or deed of trust prior to seeking foreclosure. *Allen v. Chase Home Finance, LLC, et al.*, Civil Action No. 4:11CV223 (E.D.Tex. Jun. 10, 2011); *Sawyer v. Mortgage Electronic Registration Systems, Inc.*, 2010 WL 996768 (N.D.Tex. Feb. 1, 2010). Defendants' evidence shows that U.S. Bank is the holder of the note, as that term is used in the UCC, and Ocwen is the loan servicer for U.S. Bank.

*Negligent Misrepresentation*

Plaintiffs allege in the Amended Complaint that Defendants made misrepresentations in the course of business in which they had a pecuniary interest. More specifically, Plaintiffs allege that Defendants misrepresented that they would provide a loan modification or reinstate the loan prior to foreclosure. To succeed on a claim of negligent misrepresentation, a plaintiff must show: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.24 (Tex.2002); *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex.App.–Houston [14th Dist.]

2010, no pet.); *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 734 (N.D.Tex. Feb. 10, 2011). The misrepresentation at issue, however, must be one of existing fact and not a promise of future conduct. *See Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex.App.–Amarillo 2007, no pet.) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex.App.–Houston [1st Dist.] 2007, no pet.)); *Pennington v. HSBC Bank USA, Nat'l Assoc., et al.*, 2011 WL 6739609 (W.D.Tex. Dec. 22, 2011)[2] (citing *Fankhauser v. Fannie Mae*, 2011 WL 1630193 (E.D.Tex. Mar. 20, 2011). "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex.App.–Tyler 2005, pet. denied).

Plaintiffs' negligent misrepresentation allegation concerns only an alleged promise to do or refrain from doing something in the future. Namely, Plaintiffs complain that Defendants said they would give them a loan modification and told them they would not seek foreclosure. These allegations do not concern an existing fact and are not actionable as a claim for negligent misrepresentation.

*Fraud*

Plaintiffs additionally assert a common law fraud claim as a result of Defendants' alleged misrepresentations. A fraud claim requires showing: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*,

---

[2] Accepted and Adopted on January 20, 2012.

52 S.W.3d 749, 758 (Tex.2001). A heightened pleading requirement applies to claims of fraud. Pursuant to Fed.R.Civ.P. 9(b), the circumstances constituting fraud must be stated with particularity. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.1997). The Amended Complaint in this case does not provide that level of specificity. In addition, the evidence offered by Plaintiffs in support of this claim, the affidavit of Mildred Edwards, likewise does not provide specific information concerning who made statements or when. Instead, she offers generally that "they told us not to pay" while the modification application was pending and that "they would not foreclose in the meantime."

Defendants argue that Plaintiffs' fraud claim additionally fails because it is barred by the statute of frauds. Texas law requires that any modification to an existing agreement must be in writing if the "modification encompasses or relates to a matter that must be in writing." *Deuley v. Chase Home Fin. LLC*, 2006 WL 1155230 (S.D.Tex. Apr. 26, 2006). Texas law provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex.Bus. & Com.Code § 26.02(b). It is undisputed that the loan at issue in this case exceeded $50,000. The statute of frauds as it relates to loan agreements encompasses agreements to delay repayment or to make financial accommodation. *Montalvo v. Bank of America Corp.*, 2012 WL 39829 (W.D.Tex. Jan. 6, 2012). The note at issue also expressly provides that it cannot be contradicted by any oral agreement.

Texas courts have not clearly stated whether traditional equitable exceptions to the statute of frauds are applicable to § 26.02. *Id*. They have held, however, that "there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds" for promissory estoppel to create an exception to the statute of frauds. Ford v. City Bank of Palacios, 44 S.W.3d 121, 139 (Tex.App.–Corpus Christi 2001, no pet.); *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex.App.–Houston [14th Dist.] 2005, pet. denied). There has been no showing that Defendants promised to prepare a written agreement memorializing the alleged oral promise not to foreclose or directing Plaintiffs not to make payments.

*Debt Collection*

Plaintiffs have withdrawn their DTPA claim, asserted under the tie-in provision of the Texas Debt Collection Act. They also asserted a FDCPA claim in the amended complaint against Ocwen. The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It is intended to protect both debtors and non-debtors from misleading and abusive debt-collection practices. *See Wagstaff v. U.S. Dept. of Education*, 509 F.3d 661, 663 (5th Cir.2007). Among other things, the FDCPA prohibits debt collectors from making false or misleading representations and places limits on the communications between debt collectors and consumers when a debt collector is attempting to collect a debt. *See generally*, 15 U.S.C. §§ 1692c, 1692e, 1692f and 1692g.

A "debt collector" is statutorily defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In addition, the statute excludes a creditor attempting to collect a debt owned to them while using their own name or "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . .concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(A) and (F)(iii). Moreover, the term "creditor," as defined in the FDCPA "does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). This provision has been construed to mean that both mortgagees and mortgage servicing companies are not debt collectors and are statutorily exempt from liability. *See Fouche' v. Shapiro & Massey L.L.P.*, 575 F.Supp.2d 776, 783 (S.D.Miss. Aug. 5, 2008).

Applying the facts of this case, Ocwen, as the loan servicer, is not a debt collector as defined by the FDCPA. *See Bittinger v. Wells Fargo Bank NA*, 744 F.Supp.2d 619, 626 (S.D.Tex. Oct. 8, 2010) (*citing Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)). The FDCPA does not provide relief concerning a mortgage servicer's activities and Ocwen's uncontroverted summary judgment evidence shows that Ocwen became the loan servicer prior to Plaintiffs' default, resulting in an exclusion from liability pursuant to 15 U.S.C. § 1692a(6)(F)(iii). Ocwen is entitled to summary judgment on Plaintiffs' FDCPA claim.

*Helping Families Save Their Homes Act*

Plaintiffs allege that Defendants failed to provide notice of the mortgage transfer as required by 15 U.S.C. § 1641(g). As Defendants point out, however, § 1641(g) was enacted in May 2009. Although subsequent documents were filed memorializing the transfer, the transfer to U.S. Bank had

an effective date of November 14, 2005. Plaintiffs have not shown that § 1641(g) is applicable. The statute does not apply to prior violations. *See Johnson v. Deutsche Bank Nat. Trust Co.*, 2010 WL 4962897 (S.D.Tex. Dec. 1, 2010).

*Counterclaims*

Defendants assert counterclaims for breach of contract and suit on the note. Under Texas law, a breach of contract requires a showing of: (1) the existence of a valid, enforceable contract; (2) that the party seeking relief performed or tendered performance; (3) the opposing party breached the contract; and (4) the breach caused damages. *Valero Mktg. & Supply Co. v. Kalama Int'l.*, 51 S.W.3d 345, 351 (Tex.App.–Houston [1st Dist.] 2001, no pet.). Similar elements apply to the suit on the note. *See Doncaster v. Hernaiz*, 161 S.W.3d 594, 602 (Tex.App.–San Antonio 2005, no pet.). The note at issue is a valid, enforceable contract. It is undisputed that Plaintiffs received the loan funds provided for in the note and that they are now in default on the loan, thereby causing monetary damages to U.S. Bank. The note expressly provides that the borrower is in default if the full amount of each monthly payment is not paid and that the Note Holder may accelerate the note and may seek foreclosure. There are no genuine issues of material fact concerning Defendants' counterclaims and Defendants are entitled to judgment as a matter of law. The issue of attorney's fees may be briefed post-judgment.

*Summary*

Having carefully considered the evidence, the Court finds that Plaintiffs' motion for summary judgment should be granted in part and denied in part and Defendants' motion for summary judgment should be granted. While the Court is sympathetic to Plaintiffs' predicament, Plaintiffs have not shown that they are entitled to summary judgment on their claims, with the exception of

Plaintiffs' motion to voluntarily dismiss HAMP claims. Defendants have shown that they are entitled to summary judgment on Plaintiffs' remaining claims and on their counterclaims for breach of contract and suit on a note. It is accordingly

**ORDERED** that Plaintiff's Motion for Summary Judgment and for Partial Summary Judgment and Voluntary Dismissal of HAMP Claims (document #52) is **GRANTED** in part and **DENIED** in part. The motion is granted to the extent that Plaintiffs seek dismissal of their HAMP claims and denied in all other respects. It is further

**ORDERED** that Defendants' Motion for Summary Judgment (document #53) is **GRANTED**. All claims asserted by Plaintiffs are **DISMISSED** with prejudice. Defendants are entitled to enforce the terms of the note. It is further

**ORDERED** that the Pretrial Conference, Jury Selection and Trial set for March 26, 2012 is **CANCELED**. Any motion not previously ruled on is denied.

So **ORDERED** and **SIGNED** this **12** day of **March, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE